IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

GARY KIRCHNER,                                    )
                                                  )
                    Plaintiff,                    )
                                                  )          CIVIL ACTION
vs.                                               )
                                                  )          FILE No. 4:23-CV-00940
CRESTWOOD SQUARE ASSOCIATES, L.P.                 )
                                                  )
                    Defendant.                    )

## COMPLAINT

COMES NOW, GARY KIRCHNER, by and through the undersigned counsel, and files this, his Complaint against Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P., pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").   In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq*., based upon Defendant's CRESTWOOD SQUARE ASSOCIATES, L.P., failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff GARY KIRCHNER (hereinafter "Plaintiff") is and has been at all times relevant to the instant matter, a natural person residing in St. Louis, Missouri, (St. Louis County).

3.      Plaintiff is disabled as defined by the ADA.

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P. (hereinafter "CRESTWOOD SQUARE ASSOCIATES, L.P.") is a domestic limited partnership that transacts business in the State of Missouri and within this judicial district.

8.      Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P., may be properly served with process via its Registered Agent, to wit:  c/o Kevin M. Cushing, Registered Agent, 120 S. Central Avenue, Suite 1800, St. Louis, MO  63105.

## FACTUAL ALLEGATIONS

9.      On or about June 5, 2023, Plaintiff was a customer at "Applebee's", a business located at 9031 Watson Road, St. Louis, MO  63126, referenced herein as "Applebee's".  *See* Receipt attached as Exhibit 1.  *See* Selfie attached as Exhibit 2.

10.     Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P., is the owner or co-owner of the real property and improvements that Applebee's is situated upon and that is the subject of this action, referenced herein as the "Property."

11.     Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P., as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property.  Even if there is a lease between Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P., and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations.  *See* 28 CFR § 36.201(b).

12.     Plaintiff's access to Applebee's at the Property, located at 9031 Watson Road, St. Louis, MO  63126, St. Louis County Property Appraiser's property identification number 25L520652 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and she will be denied and/or limited in the future

unless and until Defendant is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

13.    Plaintiff lives 6 miles from the Property.

14.    Plaintiff's June 5, 2023, visit to the Property as a customer of Applebee's is Plaintiff's eighth visit to the Property as a customer.

15.    Given the close vicinity of the Plaintiff's residence to the Property and given the previous eight visits Plaintiff made to the Property as a customer, Plaintiff is routinely driving by and visiting the Property.

16.    Plaintiff has visited the Property eight times before as a customer and advocate for the disabled.  Plaintiff intends to revisit the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer, to determine if and when the Property is made accessible and to substantiate already existing standing for this lawsuit for Advocacy Purposes.

17.    Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

18.    Plaintiff travelled to the Property as a customer eight times previously and as an independent advocate for the disabled, personally encountered many barriers to access the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

19.     Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the Complaint in a subsequent visit as, for example, one accessible parking space may not be available and she would need to use an alternative accessible parking space in the future on his subsequent visit.  As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

20.     Plaintiff's inability to fully access the Property and the stores in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

21.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*

22.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)   discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education,

transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)      the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

23.     Congress explicitly stated that the purpose of the ADA was to:

(i)      provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)     provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv)     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

24.      The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

25.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

26.     The Property is a public accommodation and service establishment.

27.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

28.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

29.     The Property must be, but is not, in compliance with the ADA and ADAAG.

30.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property and as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31.     Plaintiff intends to visit the Property again as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

7

32.     Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P., has discriminated against Plaintiff (and others with disabilities) by denying him access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

33.     Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P., will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P., is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

34.     A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

(i)     On the southeast side of Applebee's, the accessible parking space does not have a marked access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This barrier to access makes it nearly impossible for an individual in a wheelchair to enter and exit their vehicle at this accessible parking space due to the close presence of parked vehicles on either side of the accessible parking space not providing enough room for the wheelchair, this eliminates the accessible route from this accessible parking space.

(ii)     On the southeast side of Applebee's, the bottom edge of the sign identifying the accessible parking space is at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space**.**

(iii)    On the southeast side of Applebee's, due to the barrier to access identified in (i), (iv), (v) and (vi) of Paragraph 37 of this Complaint, the Property lacks an accessible route from this accessible parking space to the accessible entrances of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

(iv)    On the southeast side of Applebee's, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

(v)     On the southeast side of Applebee's, the accessible curb ramp lacks a clear and level area at the top of the ramp of at least 36 inches in length past the top of the ramp in violation of Section 406.4 of the 2010 ADAAG

Standards.  This barrier to access would make it difficult and dangerous for Plaintiff to access the public accommodations offered at the Property because a clear and level landing is necessary for Plaintiff to safely turn from the ramp towards the entrances, by not having a clear and level landing, Plaintiff is forced to turn on a sloped surface which can cause the wheelchair to tip over and cause injury.

(vi)    On the southeast side of Applebee's, due to the incursion of the accessible ramp, the walking surfaces of the accessible route have a cross slope in excess of 1:48, in violation of Section 403.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because excessive cross-slope along accessible routes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

(vii)   On the western side of Applebee's, the Property has an accessible ramp leading from the two accessible parking spaces to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

(viii)  On the western side of Applebee's, the accessible curb ramp lacks a clear and level area at the top of the ramp of at least 36 inches in length past the

top of the ramp in violation of Section 406.4 of the 2010 ADAAG Standards.  This barrier to access would make it difficult and dangerous for Plaintiff to access the public accommodations offered at the Property because a clear and level landing is necessary for Plaintiff to safely turn from the ramp towards the entrances, by not having a clear and level landing, Plaintiff is forced to turn on a sloped surface which can cause the wheelchair to tip over and cause injury.

(ix)     In front of Unit 9051C, the ground surfaces of the accessible space and associated access aisle have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

(x)     In front of Unit 9051C, there is a vertical rise at the base of the accessible ramp that is approximately an inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property when using this accessible ramp as vertical rises on ramps are particularly dangerous as the surface of the ramp is already at a significant slope which increases the likelihood of the wheelchair to tip over due to the vertical rise.

(xi)     In front of Unit 9051C, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope

11

exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

(xii)    In front of Unit 9051A, there is a vertical rise at the base of the accessible ramp that is in excess of a ¼ an inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property when using this accessible ramp as vertical rises on ramps are particularly dangerous as the surface of the ramp is already at a significant slope which increases the likelihood of the wheelchair to tip over due to the vertical rise.

(xiii)   In front of Unit 9051A, the Property has an accessible ramp leading to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

(xiv)   In front of Unit 9051B, the ground surfaces of the accessible space and associated access aisle have vertical rises in excess of ¼ (one quarter) inch

12

in height, are not stable or slip resistant, have broken or unstable surfaces
or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010
ADAAG standards. This barrier to access would make it dangerous and
difficult for Plaintiff to access the units of the Property.

(xv)    In front of Friar Tuck, the bottom edge of the signs identifying the two
accessible parking spaces are at a height below 60 inches from the floor in
violation of Section 502.6 of the 2010 ADAAG standards. This barrier to
access would make it difficult for Plaintiff to locate an accessible parking
space.

(xvi)   In front of Friar Tuck, the accessible curb ramp lacks a clear and level area
at the top of the ramp of at least 36 inches in length past the top of the
ramp in violation of Section 406.4 of the 2010 ADAAG Standards.  This
barrier to access would make it difficult and dangerous for Plaintiff to
access the public accommodations offered at the Property because a clear
and level landing is necessary for Plaintiff to safely turn from the ramp
towards the entrances, by not having a clear and level landing, Plaintiff is
forced to turn on a sloped surface which can cause the wheelchair to tip
over and cause injury.

(xvii)  In front of Friar Tuck, the walking surfaces of the accessible route have a
cross slope in excess of 1:48, in violation of Section 403.3 of the 2010
ADAAG standards. This barrier to access would make it dangerous and
difficult for Plaintiff to access the units of the Property because excessive
cross-slope along accessible routes increases the likelihood of Plaintiff's

13

wheelchair tipping over on its side and injuring Plaintiff.

(xviii)   Across the vehicular way from Westlake Ace Hardware, the bottom edge of the signs identifying the four accessible parking spaces are at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(xix)   South and across the vehicular way from Westlake Ace Hardware, the bottom edge of the signs identifying the two accessible parking spaces are at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(xx)   South and across the vehicular way from Westlake Ace Hardware, the four accessible parking spaces and associated access aisles have a running slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

(xxi)   South and across the vehicular way from Westlake Ace Hardware, the four accessible parking spaces are not located on the shortest distance to the accessible route leading to the accessible entrances in violation of Section 208.3.1 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the units of the

Property from these accessible parking spaces as the far location increases the likelihood of traversing into the vehicular way and getting struck by a vehicle or encountering a barrier to access which stops Plaintiff from accessing the public accommodations offered at the Property.

(xxii)   There are no accessible parking spaces on the Property that have a sign designating an accessible parking space as "Van Accessible" in violation of Section 208.2.4 of the 2010 ADAAG standards and Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate a van accessible parking space.

(xxiii)  Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

35.   The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

36.   Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

37.   The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

38.    All of the violations alleged herein are readily achievable to modify to bring the Property into compliance with the ADA.

39.   Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

15

40.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant has the financial resources to make the necessary modifications since the Property is valued at $7,000,000.00 according to the Property Appraiser website.

41.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable.

42.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction available from the IRS for spending money on accessibility modifications.

43.     Upon information and good faith belief, the Property has been altered since 2010.

44.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

45.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P., is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

46.     Plaintiff's requested relief serves the public interest.

47.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P.

48.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P., pursuant to 42 U.S.C. §§ 12188 and 12205.

49.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P., to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P., in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P., from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, CRESTWOOD SQUARE ASSOCIATES, L.P., to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the

circumstances.

Dated: July 26, 2023.

Respectfully submitted,

Law Offices of
THE SCHAPIRO LAW GROUP, P.L.

/s/  Douglas S. Schapiro
Douglas S. Schapiro, Esq.
State Bar No. 54538FL
The Schapiro Law Group, P.L.
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com


ATTORNEYS FOR PLAINTIFF
GARY KIRCHNER

18